673 P.2d 404.

In the Matter of the Application of BRETT'S MOBILE HOMES, INC., dba Ron's Transport Company for a Motor Carrier Permit.

NATIONAL TRAILER CONVOY, INC., Appellant,

v.

Leigh KELLEY and the Idaho Public Utilities Commission, Respondents.

NATIONAL TRAILER CONVOY, INC., Appellant,

v.

BRETT'S MOBILE HOMES, INC., dba Ron's Transport Company, and the Idaho Public Utilities Commission, Respondent.

Nos. 14208, 14495.

Supreme Court of Idaho.

Dec. 8, 1983.

William A. McCurdy, of Quane, Smith, Howard & Hull, Boise, for appellant.

David E. Wishney, of Wishney & Elgee, Boise, for respondent, Brett's Mobile Homes, Inc.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., and Marsha H. Smith, Deputy Atty., Boise, for respondent, Idaho Public Utilities Com'n.

Douglas F. Rose, Shoshone, for respondent, Leigh Kelley.

DONALDSON, Chief Justice.

National Trailer Convoy (National) has appealed from orders of the Idaho Public Utilities Commission (IPUC) which granted motor carrier permits in two separate cases. In Case No. 14208, the Commission granted a motor carrier permit to Brett's Mobile Homes, Inc. (Brett's). In Case No. 14495, the Commission granted a motor carrier permit to Leigh Kelley (Kelley). On appeal, National contends that the Commission erred in granting the permits in both cases because (1) the Commission failed to consider the effect the new permit would have on existing carriers; and (2) there was insufficient evidence in the record to support the Commission's orders. We disagree on both counts.

## A. CASE NO. 14208 (BRETT'S)

The first case involves Brett's, an Idaho corporation, selling new and used mobile homes in Idaho Falls, Idaho. On August 29, 1980, Brett's applied for a motor carrier permit to transport mobile homes over irregular routes within Idaho. The Commission gave notice that it intended to consider Brett's application under the modified procedure. However, after granting intervenor status to Morgan Drive Away, Inc., Transit Homes, Inc., Barrett Mobile Home Transports, and National, the Commission scheduled a full hearing. All the parties attended the hearing and presented testimony. Subsequently, the Commission granted Brett's a motor carrier permit to transport "MOBILE HOMES IN PRIMARY AND SECONDARY MOVES OVER IRREGULAR ROUTES WITHIN AND BETWEEN EASTERN AND WESTERN IDAHO REGIONS." Three of the four intervenors petitioned for a rehearing. The Commission supplemented its original order and denied the petitions. National has appealed from the Commission's orders granting Brett's permit and denying the petition for rehearing.

## B. CASE NO. 14495 (KELLEY)

The second case involves Leigh Kelley, an experienced mover of mobile homes, residing in Shoshone, Idaho. On December 31, 1980, Kelley applied for a motor carrier permit to transport mobile homes over irregular routes within Idaho. Again, the Commission gave notice that it intended to process Kelley's application under the modified procedure. After granting intervenor status to Transit Homes, Inc., Morgan Drive Away, Inc., and National, the Commission scheduled a full hearing. The Commission heard testimony from Kelley and the intervenors, and thereafter granted the permit to Kelley. The permit authorized Kelley to transport "MOBILE HOMES IN PRIMARY AND SECONDARY MOVES OVER IRREGULAR ROUTES WITHIN THE ENTIRE STATE OF IDAHO." National petitioned for a rehearing which was granted in part. After the rehearing, the Commission affirmed its order granting the permit to Kelley. National has appealed from the Commission's orders.

## I.

Appellant first contends that the Commission failed in both cases, to comply with the mandates of I.C. § 61–802, which requires the Commission to consider the effect the permit will have on existing carriers. Appellant contends that the Commis-

sion must make specific findings of fact regarding any possible effect.

I.C. § 61–802 governs the IPUC's authority to grant motor carrier permits. I.C. § 61–802 sets out a two-part test that must be satisfied prior to the issuance of a motor carrier permit.

First, the Commission must find the applicant fit, willing and able, both to properly perform the proposed service, and to conform to the provisions of the chapter and the requirements of the Commission. Second, the Commission must find that the proposed service is, or will be, required by the present or future public convenience and necessity. In assessing the public convenience and necessity, the Commission must consider any possible effect the new carrier service may have on existing carriers. While this consideration is mandatory, neither the language of the statute nor our recent decisions require the Commission to make specific factual findings regarding any possible effect. *Hartwig v. Pugh*, 97 Idaho 236, 542 P.2d 70 (1975).

Within this framework, we must determine whether the Commission undertook such a consideration in the cases presently before this Court. A review of the evidence before the Commission and its Findings of Fact demonstrate that the Commission indeed considered the effect of new carrier service on existing carriers in both cases.

### A. CASE NO. 14208 (BRETT'S)

Wayne Kringen, witness for Transit Homes, Inc., testified that he did not feel another transporter was needed in the Idaho Falls area. However, Kringen testified that Transit currently did not have an office in Idaho Falls, and in fact during the first nine months of 1980, Transit did not personally have any traffic originating east of Mountain Home.

Mr. Robert Nielson, witness for National, testified that the coverage in the area was adequate and there was no need to add new carriers. However, Nielson also testified that during the preceding ninety days, dur-

ing which time Brett's had obtained the authority to operate in the area on a lease agreement, he had not noticed a discernible impact on his business. In fact, Nielson testified that less than eight percent of his total Idaho intrastate traffic originated in Eastern Idaho.

Mr. David Putrzenski, witness for Morgan Drive Away, Inc., testified that he had no terminal in Idaho Falls and that purely local moves would be difficult to make if one of his drivers had to come in from the nearest terminal to do it. In addition, he stated that Brett's operation could take some traffic from his operation, but that it was unlikely that Brett's could take it all.

The Commission's Supplemental Findings of Fact IV and V stated that Brett's business would be confined primarily within the Idaho Falls area, and consist mainly of secondary moves. Finding of Fact VIII considered the past decline in mobile home transportation since 1978 and the signs indicating additional traffic in the future. Finally, Finding of Fact XII demonstrated that the Commission indeed considered evidence regarding the diversion of traffic from the appellant and other competing carriers, and determined no such diversion existed.

The evidence before the Commission and its findings demonstrate that the Commission considered the effect the proposed permit would have on existing carriers. We hold that the Commission met its statutory duty under I.C. § 61–802 in Case No. 14208.

### B. CASE NO. 14495 (KELLEY)

As in Brett's, we must review whether the Commission considered the effect the proposed permit would have on existing carriers in this case. We turn first to examine the evidence.

Mr. Bingham, witness for Mr. Kelley, and salesman for Brockmans Mobile Homes, testified that the market for the sale of mobile homes was improving all the time. In this regard, he stated that there was a great deal of work and not enough haulers to do the work. He testified, based on his experi-

ence with delivery of mobile homes both from his lot to customers and from the manufacturer to his lot, that he could use additional carriers. He indicated a preference for local carriers. He also testified that if the IPUC granted a permit to Mr. Kelley, he would use his services two to three times a month. Mr. Dale Sluder, witness for Mr. Kelley, and in the business of sand and gravel production and contracting, testified that he primarily needed a local mover available on short notice. He stated it was important to him to have a carrier he knew personally, as Mr. Kelley, because he would then be familiar with the carrier's reputation and expertise.

The Findings of Fact also demonstrate that the Commission considered the possible impact on existing carriers. Finding of Fact VI states as follows: "Supporters indicated there would be several times during a year that they could use Applicant, especially when other movers were not available. Most supporters indicated there was a public necessity for another carrier located in the Shoshone, Jerome and Twin Falls area." Finding of Fact VIII states that "[i]ntervenors presented no factual data that indicated the mobile homes moved by Applicant during part of 1979, 1980 and part of 1981 had adversely effected [sic] their revenue." According to Finding of Fact VIII, National's first quarter revenue in 1981 had increased as compared to the first quarter revenue of 1980. National attributed this increase to the activity occurring in the Challis mining area which brought an influx of people and an increase of mobile homes to the area. The Commission further found

> "[t]he volume of business is [sic] this industry has a questionable future; however, no more so than any other industry. Applicant has generated a fair business in the past, which suggests that there will also be future business generated through the same sources. The diversion of the mobile home traffic from existing carriers, if such does in fact occur, would be minimal should a permit be granted to Applicant."

Finding of Fact XI.

Based on the evidence before the Commission and the Commission's Findings of Fact, it is apparent that the Commission considered the effect the proposed permit would have on existing carriers. We hold the Commission met its statutory obligation under I.C. § 61–802 in Case No. 14495 as well.

## II.

The appellant further contends that the evidence presented at the hearing failed to support the Commission's findings that the proposed permit is, or will be, required by the present or future public convenience and necessity.

This Court will not weigh the evidence, but will review the record and sustain the findings of the IPUC if they are supported by competent, substantial, although conflicting, evidence. *Associated Pacific Movers, Housemovers v. Rowley,* 97 Idaho 663, 551 P.2d 618 (1976); *Hartwig v. Pugh,* 97 Idaho 236, 542 P.2d 70 (1975).

We have examined the record in both cases and find there is competent evidence to support the Commission's Findings. We affirm the Commission's orders in both Case No. 14208 and Case No. 14495.

Orders affirmed.

Costs to respondents.

No attorney fees on appeal.

SHEPARD, BAKES, BISTLINE and HUNTLEY, JJ., concur.